In the Matter of the Claim for Benefits under Article 18 of the Labor Law, Made by LILA FITZGERALD, Claimant.

DICTOGRAPH PRODUCTS COMPANY, INC., Appellant; FRIEDA S. MILLER, as Industrial Commissioner, Respondent.

Third Department, March 4, 1942.

*Stanley Osserman* [*Theodore F. Tonkonogy* and *Anthony Battaglia* with him on the brief], for the appellant.

*John J. Bennett, Jr., Attorney-General* [*Henry Epstein, Solicitor General*, and *Francis R. Curran, Assistant Attorney-General*, of counsel], for the respondent.

BLISS, J. Appellant is engaged in the manufacture and sale of a hearing aid device known as the acousticon. Its principal office is in New York city and it maintains branch offices under charge of branch managers in a number of the larger cities throughout the United States where both inside and outside sales persons are employed. In addition it contracts with so-called distributors

in other communities who are under supervision of the branch managers. Claimant was engaged as a saleslady with the title of "acoustician." She was hired by a Mr. Paul, who was then the branch manager at Boston and also temporarily in charge of the Albany distribution office which was then in the process of transfer from one distributor to another. A Mr. Sweet was under consideration for the Albany distributorship. He brought claimant down to the office and Mr. Paul, the branch manager, hired her. Sweet did not qualify for the distributorship and it was finally taken over first by a man named Fisler and succeeding him by a Mr. Davis. Claimant said that Paul, the branch manager, made her familiar with all the work she had to do, gave her her instructions and orders until Mr. Fisler took over the office.

Appellant claims that claimant was an employee of the distributor instead of itself and bases this contention chiefly upon the contract between the distributor and the company. This contract is several pages in length and goes into great detail as to the relations between the distributor and the company. It provides that all acousticians shall be employed and paid by the distributor only and subject to his sole direction and control and shall to no extent be under the direction of the company. They are not to be the agents or employees of the company. If this were the only provision in the contract dealing with the relationship between the acousticians and the company our task would be simple. But the contract contains many provisions which contradict this disavowal of direction and control on the part of the company over the distributor and the acousticians. Some of the more important of these are as follows:

The distributor is appointed by the company for the retail sale of instruments and the resale of accessories sold him by the company and batteries purchased from a manufacturer designated by the company. He cannot deal in any competing product whatsoever. He must maintain an office befitting the prestige of the product together with a sales force consisting of four salesmen to be known as acousticians and the company agrees to co-operate with him in the training of these acousticians. The company shall consign to him such number of instruments as it may deem necessary and instruments may be leased or rented only on forms authorized by the company and approved by it and acousticians must be paid fifty per cent of the rental fee. All sales must be on contracts approved by the company and at the current list prices fixed by the company. Discounts or rebates are prohibited. Daily reports of sales of the company's instruments as well as all products other than acousticons are required on forms prescribed

by the company. The company agrees to pay the distributor a discount at a specified rate or at such rate as it shall determine and the distributor must assist the company in collection of the installment accounts. The distributor must keep records of prospects and customers in accordance with company regulations and procedure and inform the company daily of new prospects on company-prescribed forms. These prospect files and sales material and all records pertaining to the business are the property of the company. Upon termination of the agreement they must be turned over to the company which also has the first option to assume the distributor's lease. The company has access to the distributor's premises. It must approve his advertising. The distributor may not sell used hearing aids or give any guaranty other than that authorized by the company. The distributor agrees to compensate the acousticians at certain specified rates fixed by the contract. The telephone number becomes the property of the company upon termination of the agreement. The agreement may be terminated by the company for failure on the part of the distributor to perform any of its terms or to comply with sales policies promulgated by the company.

Thus, while the contract does in form state that the acousticians such as claimant are not under the direction and control of the company, the effect of the complete document is that for all practical purposes the company does actually control the distributor and his sales force in every regard. They are bound hand and foot to the sales policies of the company. Practically no discretion is left to the distributor or his sales force in the selling of the company's product. The office had continuity from one distributor to another and claimant continued on with it as an employee still selling the company's products. She was, to a much greater extent, an employee of the company than of the distributor. The Unemployment Insurance Appeal Board was fully justified in holding that the claimant was in fact an employee of the appellant.

The Attorney-General also relies upon paragraph (b) of subdivision 3 of section 502 of the Unemployment Insurance Law (Labor Law, art. 18), which reads as follows: " In determining whether an employer is subject to this article, and in determining for what contributions he is liable hereunder, such employer shall, whenever he contracts with any person for any work which is part of such employer's usual trade, occupation, profession or enterprise be deemed to employ all employees employed by such person for such work, and he alone shall be liable for the contributions hereunder with respect to wages paid to such employees for such work, unless such person performs work or is in fact actually available to perform work for any one who may wish to

contract with him and is also found to be engaged in an independently established trade, business, profession or enterprise."

Under this statute if the so-called distributor in charge of the Albany office was not in fact actually available to perform work or did not perform work for others who might wish to contract with him and was not engaged in an independently established business, then employees of such distributor must be deemed employees of the company. The distributor's contract did not permit him to perform such work and he was not available to perform work for any other company. Nor was he engaged in an independently established business. He could not manufacture, sell or distribute or aid in or promote the manufacture, sale or distribution of any products or devices or accessories which would in any manner compete with acousticons. Thus the claimant became an employee of the company by virtue of this statute also.

The determination should be affirmed, with costs to the Industrial Commissioner against the appellant.

HILL, P. J., CRAPSER, SCHENCK and FOSTER, JJ., concur.

Determination affirmed, with costs to the Industrial Commissioner against the appellant.